NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CAROLINE O'MEARA, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 07-CV-4429 (DMC) |
| | : | |
| THE CIT GROUP, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment by Plaintiff Caroline O'Meara ("Plaintiff") and motion for summary judgment by Defendant The Cit Group, Inc. ("Defendant," collectively, with Plaintiff, the "Parties"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the Parties, and based upon the following, it is the finding of this Court that Plaintiff's motion for summary judgment is **granted in part and denied in part**, such that summary judgment is granted with respect to Counts I and II and denied with respect to Counts III and IV; and Defendant's motion for summary judgment is **granted in part and denied in part**, such that summary judgment is denied with respect to Counts I and II and granted with respect to Counts III and IV.

I.    **BACKGROUND**[1]

    A.    Procedural History

On September 4, 2007, Plaintiff filed the Complaint, alleging that Defendant breached its fiduciary duty as the Plan Sponsor and Plan Administrator of the Health Care Flexible Spending Account ("FSA") (First Count), that it acted in bad faith in its administration of the FSA (Second Count), that it negligently misrepresented the FSA's rules (Third Count) and that it is barred by the doctrine of equitable estoppel from changing the rules for administering the FSA after Plaintiff relied upon them to her detriment (Fourth Count). On November 7, 2007, Defendant answered the Complaint. Neither party has undertaken discovery, as this case does not present any factual disputes, but rather should be decided by summary judgment.

    B.    Factual History

Plaintiff became employed as an underwriter by Defendant in August, 2005. Upon her employment, Plaintiff was given the 2005 New Hire Enrollment Guide (the "Guide"), which describes various employee benefits, including a FSA. At the time Plaintiff became Defendant's employee, Plaintiff needed orthodontic work and was considering contributing money toward a FSA for this purpose. Based upon prior experience with other companies, IRS rules regarding when medical expenses are incurred for income tax purposes and upon the information contained in the Guide, Plaintiff elected to have $3,000.00 deducted from her paycheck in 2005 to be deposited in a FSA.

The only statement in the Guide pertaining to when expenses are "incurred" is contained on page 20, under the heading "Internal Revenue Service Rules" and subheading "Expenses are

---

[1] The facts set forth in this Opinion are taken from the undisputed facts set forth in the Parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

2

Limited to the Calendar Year." This section states, in pertinent part: "You must incur your eligible expenses by December 31 of the calendar year in which your contributions are made." Defendant's Summary Plan Description ("SPD") for the FSA contains essentially the same language: "Only expenses incurred during a calendar year are reimbursable through your FSA in that year"

After enrolling in Defendant's FSA, Plaintiff commenced her orthodontic treatment. Plaintiff  paid her orthodontic bills in December of 2005 with a payment of $4,878.25 to Moorestown Dental Associates ("Moorestown"). On or about January 19, 2006, Plaintiff submitted her FSA Reimbursement Claim for $3,000.00 to the FSA Administrator, Aetna Life Insurance Company ("Aetna"). Aetna responded to Plaintiff's Claim by sending her a check in the amount of $623.63 and an "Explanation of Payment," dated February 1, 2006. The only "explanation" of Aetna's position for the "Explanation of Payment" was contained on the back: "Total expenses exclude payments made by other plans." Aetna, however, did not take the position that none of the expenses would be reimbursed from the 2005 FSA because not all of the services were performed in 2005. After receiving only partial payment from Aetna, Plaintiff called Aetna by telephone on February 17, 2006 and spoke to "Andrea." Andrea told Plaintiff  to send in another form with a copy of the orthodontic contract and gave Plaintiff her facsimile number. Plaintiff  faxed Andrea the information that she requested. Aetna never responded in writing to Plaintiff 's inquiry. After numerous telephone calls, however, Aetna advised Plaintiff that she would not be able to recover the remaining $2,377.37 in her FSA because not all of the orthodontic services were performed during 2005. Plaintiff  subsequently filed her written claim with Aetna on or about August 14, 2006. By letter dated September 22, 2006, Aetna responded to

Plaintiff  that her claim was being forwarded to the Plan Sponsor for a final review and that the

Plan Sponsor would provide a written response. After calling Aetna and Defendant numerous

times in December 2006 and February 2007 and without a decision regarding her claim,

Plaintiff's attorney wrote a letter to Defendant dated May 10, 2007, again requesting that the

claim be reviewed. Defendant finally responded to Plaintiff 's claim and rejected it by letter dated

July 3, 2007, contending that Plaintiff  was not entitled to recover the funds she had set aside in

2005 because not all of her orthodontic treatment was completed in 2005.

## II.   STANDARD OF REVIEW: FED. R. CIV. P. 56 SUMMARY JUDGMENT

Summary judgment is granted only if all probative materials of record, viewed with all

inferences in favor of the non-moving party, demonstrate that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of

showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components:

an initial burden of production, which shifts to the nonmoving party if satisfied by the moving

party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.

The non-moving party "may not rest upon the mere allegations or denials of his pleading" to

satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.

See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient

to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir.

1990).  "In determining whether there are any issues of material fact, the Court must resolve all

doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III.   DISCUSSION

>   A.   Defendant Breached its Fiduciary Duties to Plaintiff by Providing Benefit Documents That Did Not Clearly Define When Plaintiff Would Forfeit the Funds That She Had Set Aside in Her FSA

This case is a dispute under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1101 *et seq.* ERISA provides that a plan participant or beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). ERISA, however, does not specify a standard of review for an action brought under a §1132(a)(1)(B). See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997). The Supreme Court of the United States has addressed this issue and determined that "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Here, neither the Guide nor the SPD provided by Defendant states that Defendant had the discretion to determine eligibility for benefits or construe the terms of the Plan. Therefore, this Court reviews Defendant's denial of benefits *de novo*.

Pursuant to 29 U.S.C. § 1103(a), an employee benefit plan's assets are held "in trust" for

the beneficiary's benefit. In addition, pursuant to §1103(c):

> the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries in deferring reasonable expenses of administering the plan.

Adequate disclosure to employees is one of ERISA's major purposes. Recognizing that employee benefit plans are usually lengthy and highly technical documents, Congress required plan administrators to furnish a summary plan description to each plan participant. See 29 U.S.C. §1022(a)(1). Pursuant to §1022(a), summary plan descriptions must:

> be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

As the Plan Administrator, Defendant's Employee Benefits Plans Committee (the "Committee") had a fiduciary duty to Defendant's employees, pursuant to 29 U.S.C. §1102(a). A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. §1104(a)(1). Fiduciaries breach this duty "if they mislead plan participants or misrepresent the terms or administration of a plan." Harte v. Bethlehem Steel Corp., 214 F.3d 446, 452-53 (3d Cir. 2000). If a fiduciary provides plan participants with materially misleading information, it breaches its duty to them "regardless of whether the fiduciary's statements or admissions were made negligently or intentionally." Krohn v. Huron Mem'l Hosp., 173 F.3d 542, 547 (6th Cir. 1999). "Misleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty.'" Drennan v. Gen.

6

Motors Corp., 977 F.2d 246, 251 (6th Cir. 1992) (quoting Berlin v. Michigan Bell Tel. Co., 858

F.2d 1154, 1163 (6th Cir. 1988)). "A misrepresentation is material if there is a substantial

likelihood that it would mislead a reasonable employee in making an adequately informed

decision pursuing disability benefits to which she may be entitled." Krohn, 173 F.3d at 547

(citing In re Unisys Corp. Ret. Med. Benefit "ERISA" Litig., 57 F.3d 1255, 1264 (3d Cir. 1995)).

       To establish a claim for breach of fiduciary duty based on alleged misrepresentations

concerning coverage under an employee benefit plan, a plaintiff must show: (1) that the

defendant was acting in a fiduciary capacity when it made the challenged representation; (2) that

these constituted material misrepresentations; and (3) that the plaintiff relied on those

misrepresentations to his detriment. See Unisys, 57 F.3d at 1266.

       Because FSAs are fairly recent employee benefits, there is a dearth of case law pertaining

to them. There is, however, a plethora of employee benefit case law regarding whether an

employer has clearly described the terms of its employee benefit plans to its employees. These

cases are relevant because many of the same principles apply to FSAs. Furthermore, there is a

good argument to be made that the law pertaining to FSAs should be interpreted even more

favorably to employees because the employee is simply requesting his or her own money.

       Employers should not be prejudiced simply because an employer's description of its

benefit plans is unclear and misleading. For example, in Bowerman v. Wal-Mart Stores, Inc., the

district court held that the defendant breached its fiduciary duty to the plaintiff because it failed

to explain fully in the benefit plan documents the operation of the defendant's rehire policy vis-à-

vis the Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage and a pre-

existing condition limitation. <u>See</u> 226 F. 3d 574, 590-92 (7th Cir. 2000). The United States Court

of Appeals for the Seventh Circuit affirmed, agreeing that the benefit documents "failed to

explain how maintaining paid-up COBRA coverage rendered inapplicable a new pre-existing

condition limitation, when an employee was re-hired and eligible for immediate medical

coverage." <u>Id.</u> at 590. In <u>Jensen v. Sipco, Inc.</u>, retirees filed a class action under ERISA seeking

unchanged lifetime medical benefits, which they claimed were promised to the class. <u>See</u> 867 F.

Supp. 1384 (N.D. Iowa 1993). Prior to January of 1989, the summary plan descriptions contained

the following language dealing with termination of coverage:

> <u>Termination of Coverage</u>
> Children Who Marry or Reach Age 19 -
> All coverage for children ceases on date of marriage or age 19,
> whichever occurs first -
> Divorce of a Spouse -
> All coverage for the spouse ceases on the date of the divorce -
> Death of a Pensioner -
> Coverage for dependents continues for a period of 90 days
> following the date of death and then ceases.

<u>Id.</u> at 1389. No other language regarding the right to terminate, discontinue, alter, modify or

change the plans appeared in the summary plan descriptions. <u>See id.</u> In or about January 1989,

plaintiff class members who were receiving health care benefits received new summary plan

descriptions stating that the defendant "reserves the right to terminate, discontinue, alter, modify

or change this plan or a division of this Plan at any time. <u>See id.</u> The Court found that the

defendant breached its fiduciary duty to the plaintiffs as a matter of law because, even though the

underlying benefit plan documents expressly reserved the defendant's right to amend or

terminate each plan, the summary plan descriptions given to employees did not indicate that prior

to 1989. See id. at 1397. Therefore, the court rejected the defendant's argument that the summary plan descriptions set forth procedures that enabled employees to inspect or obtain a copy of the underlying plan documents, which reserved the defendant's right to terminate coverage. See id.

In Brumm v. Bert Bell NFL Ret. Plan, a former professional football player filed an action after being denied a higher level of permanent disability payments because his disability did not stem from a single, identifiable football injury. See 995 F. 2d 1433 (8th Cir. 1993). The denial of benefits was based upon a provision that provided for two levels of total and permanent disability payments: a player was eligible for "Level 1 T&P" benefits if "totally and permanently disabled" due to "a football injury incurred while an Active Player;" he received "Level 2 T&P" benefits if his "total and permanent disabilities result from other than a football injury." The phrase "a football injury incurred while an Active Player" was not defined. See id. at 1435. The plaintiff had played football for two different teams over a period of nine years. After his football career, he worked as a truck driver for five years when he was involved in a collision, causing him to suffer a back injury. He later worked as a dispatcher, then as a surveyor and finally as an owner/manager of a fast-food restaurant. He was unemployed since 1984, allegedly because he was unable to work due to back pain. See id. The district court upheld the defendant's decision to deny the higher disability benefits. The Eighth Circuit reversed because:

> [T]he summary plan description, as well as the Plan itself, is silent as to the meaning of "a football injury incurred while an Active Player", it fails to inform participants that this means a single, identifiable injury . . . It is hard to imagine a participant, who, after reading the language in both the Plan and the summary plan description, would assume that a single, identifiable football injury was necessary in order to qualify for the higher level of benefits. Language stating that a disability resulting from more than one football injury makes a participant ineligible for the highest level of benefits

9

would have been adequate to apprise participants of this limitation and should have been included in the summary.

Id. at 1439; see also Layaou v. Xerox Corp., 238 F. 3d 205, 210 (2d Cir. 2001).

In the current case, Defendant's Guide and SPD for the FSAs indicate that employees must "incur" eligible expenses in the same calendar year in which the funds are deposited into the FSA. At the time Plaintiff  became Defendant's employee, she needed orthodontic treatment and was considering contributing money toward a FSA. Based on prior experience with other companies, IRS rules regarding when medical expenses are incurred for income tax purposes and upon the information contained in the Guide, Plaintiff elected to have $3,000.00 deducted from her salary in 2005 and deposited into a FSA.

When Plaintiff elected to deposit money into the FSA, it was her understanding that, if an employee signs a contract for orthodontic treatment, has the initial evaluation performed, x-rays taken, molds created and the braces fitted and applied to her teeth, pays in full for that work in the given year, she has "incurred" an eligible expense for that year, even if *some* of the treatment extends over into the following year.

Because the Guide did not give any indication to Plaintiff  that, if she paid for orthodontic services in 2005, she would not be reimbursed out of her 2005 FSA, she did not research the issue any further. Even if Plaintiff did further research, however, such research would have confirmed Plaintiff's understanding that she was entitled to request reimbursement for orthodontic expenses paid in 2005. The IRS's website states: "You can include the medical and dental expenses you paid this year, regardless of when the services were provided." In December of 2005, Plaintiff paid Moorestown $4,878.25 for her orthodontic treatment.

On or about January 19, 2006, Plaintiff submitted her FSA Reimbursement Claim to Aetna for $3,000.00. Aetna responded to Plaintiff's Claim by mailing a check in the amount of $623.63 and an "Explanation of Payment" dated February 1, 2006, which stated "Total Expenses exclude payments made by other plans." Neither Aetna nor Defendant initially took the position that Plaintiff would be required to forfeit the remaining funds in her FSA because not all of the orthodontic services were performed during 2005. Plaintiff then made numerous telephone calls and mailed several letters over a period from February 2006 through July 2007 until Defendant finally formally rejected Plaintiff's claim for the remaining $2,377.37 in her FSA.

Plaintiff 's understanding that she "incurred" medical expenses during 2005, if many of the services were performed in 2005 and if she paid for them in 2005, was a reasonable interpretation of the language contained in the Guide and SPD. Furthermore, Plaintiff 's understanding was based on her prior experience with other companies and by the fact that the IRS recognizes that a medical expense is "incurred" for income tax purposes in the calendar year in which it is paid. Defendant's Guide referred employees to IRS Publication 502, which contains this IRS rule. For these reasons, coupled with the fact that the monies in the employee's FSA account came directly from Plaintiff, Defendant had a fiduciary duty to clearly state in the Guide and SPD that its interpretation of the word "incur" was different from the IRS interpretation and different from the interpretation of other companies that administer FSAs. Defendant breached its fiduciary duty to Plaintiff  and its other employees by providing misleading benefit documents to them.

    B.    <u>Defendant's Motion for Summary Judgment With Respect to Counts III and IV is Granted Because Plaintiff's Claims of Negligent Misrepresentation and Equitable</u>

Estoppel are Preempted by ERISA

In the Third Count of the Complaint, Plaintiff alleges that Defendant negligently misrepresented the rules pertaining to the FSA. Also, in the Fourth Count, Plaintiff alleges that Defendant should be equitably estopped from revising the rules pertaining to the administration of the FSA. These claims, however, are preempted by ERISA because Plaintiff's claims for negligent misrepresentation and equitable estoppel "relate to" an employee welfare benefit plan.

ERISA § 514 provides that it "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan . . ." 29 U.S.C. § 1144(a). "[T]he phrase 'relate to' [has been] given its broad[est] common sense meaning, such that a state law 'relate[s] to a 'benefit plan' in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987) (quoting Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985)); Ferguson Elec. Co., Inc. v. Foley, 115 F.3d 237, 240 (3d Cir. 1997). Moreover, the Supreme Court has stated that "a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990).

In Pilot Life, the Supreme Court held that state common law causes of action, whether grounded in contract or tort, which assert the improper processing of a claim for benefits under an employee benefit plan, are preempted by ERISA. See 481 U.S. at 43, 57. The Court reasoned that judicial regulation of such state law claims would impermissibly interfere with "the purposes and objectives of Congress." Id. at 52. The Court found that Congress clearly intended for

ERISA § 502(a) "to be the exclusive vehicle" for such actions. See id.

In the current case, Plaintiff seeks to recover benefits and/or enforce her rights under the FSA. Therefore, Plaintiff's state law claims for negligent misrepresentation and equitable estoppel are preempted by ERISA. See Bruno v. Hershey Foods Corp., 964 F. Supp. 159, 163-64 (D.N.J. 1997). In light of this preemption, Plaintiff's negligent misrepresentation and equitable estoppel claims are dismissed.

## IV.    CONCLUSION

For the reasons stated, it is the finding of this Court that Plaintiff's motion for summary judgment is **granted in part and denied in part**, such that summary judgment is granted with respect to Counts I and II and denied with respect to Counts III and IV; and Defendant's motion for summary judgment is **granted in part and denied in part**, such that summary judgment is denied with respect to Counts I and II and granted with respect to Counts III and IV.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:         March   24  , 2008
Orig.:        Clerk
cc:           All Counsel of Record
              Hon. Mark Falk, U.S.M.J.
              File

13